United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 6, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10596

_____


JOHN ARMSTRONG and DAN ARMSTRONG,

Plaintiffs-Appellants

versus

AMERICAN HOME SHIELD CORPORATION,

Defendant-Appellee


Appeal from the United States District Court
For the Northern District of Texas


Before GARWOOD and HIGGINBOTHAM, Circuit Judges, and FELDMAN,[*]
District Judge.


FELDMAN, District Judge:

John and Dan Armstrong sued American Home Shield Corporation

(AHS) for breach of contract in Texas state court. The lawsuit

was removed to federal court,[1] and the Armstrongs subsequently

---

[*] District Judge of the Eastern District of Louisiana, sitting
by designation.

[1] AHS removed this lawsuit on the basis of diversity
jurisdiction: the Armstrongs are Texas residents; AHS is a Delaware
corporation with its principal place of business in Tennessee.

amended their complaint to include claims for fraud and negligent misrepresentation.  The district court summarily dismissed each of the Armstrongs' claims.  We affirm.

I.

AHS sells and services home warranty contracts throughout Texas.  In 1995, AHS acquired Texas Home Warranty Corporation (THW) from John and Dan Armstrong.  AHS was particularly interested in emulating THW's practice of entering fixed-rate agreements with its contractors,[2] and AHS hired John and Dan Armstrong.

The Armstrongs' employment agreements included several savings programs:[3]

> Program one: the Armstrongs were to convert all AHS pool/spa contractors in Texas to the THW fixed-rate methodology;
>
> Program two: the Armstrongs were to convert 5,000 AHS contracts in the Dallas-Fort Worth area to the THW fixed-rate methodology;
>
> Program four: the Armstrongs were to recommend the implementation of contract coverages, limitations, and exclusions which AHS had not previously adopted; and

---

[2]  Home warranty firms in Texas generally paid their contractors on a per-claim basis.  Under the fixed-rate methodology, however, contractors agree to manage all repairs for a particular homeowner for a flat fee regardless of the number of service calls required.

[3]  These programs are outlined in Paragraph 8 of the agreements' Incentive Plans.  Cost savings program three is not relevant to our review.

Program five: the Armstrongs were to develop and implement a program for checking heating and air conditioning systems at the time the homeowner purchased the warranty contract.

AHS agreed to pay the Armstrongs a portion of the cost savings accomplished under each program.

The Armstrongs complained that they were not sufficiently compensated under the terms of the savings programs, and sued AHS for breach of contract, negligent misrepresentation and fraud.[4]

II.

Review of a grant of summary judgment is de novo. See Young v. Equifax Credit Info. Servs. Inc., 294 F.3d 631, 635 (5th Cir. 2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id. The moving party bears the burden of pointing to an absence of evidence to support the nonmoving party's case, and summary judgment will be granted where the nonmovant is unable to point to any evidence in the record that would sustain a finding in the

---

[4] The Armstrongs allege that, during contract negotiations, AHS misrepresented that: 1) it was losing money in the Dallas-Fort Worth market; 2) the Systems Check program was likely to expand; and 3) the average contract cost in Texas was "based on current and historical cost information."

nonmovant's favor on any issue on which he bears the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Moreover, all facts and inferences must be viewed in the light most favorable to the nonmoving party. See Perez v. United States, 312 F.3d 191, 194 (5th Cir. 2002).

## A.    Breach of Contract

The appellants first contend that AHS breached the terms of savings programs one and four. They assert that AHS failed to sufficiently compensate them for converting pool/spa contractor fee arrangements, and for recommending that AHS charge its customers for freon recovery.

### 1)    Savings Program One: Converting Pool-Spa Contractor Fee Arrangements

Savings program one provides that the Armstrongs are to be paid 25% of all cost savings realized from their conversion of AHS's pool/spa contractors to the fixed-rate methodology. Program one states:

> For example, AHS will establish its average contract cost for pool/spa option in Texas for 1995 (the "Base Cost Per Option"). If we assume the Base Cost Per Option was $140 and the average Cost Per Option in Texas in 1996 is $79, or a Cost Savings of $61 per average Cost Per Option, AHS, at the beginning of 1997, would calculate its Cost Savings (total # of applicable pool/spa options times $61), subtract applicable Deductions Against Cost Savings, multiply that amount by 18.75%, and pay Armstrong the result. The remaining 6.25% (excluding deductions) would be set aside for payment at the end of year three.

4

Accordingly, cost savings realized under program one are a function of the 1995 average cost for pool/spa contracts.

The appellants contend that AHS breached the terms of the savings program because its calculation of the 1995 "average contract cost" reflected only those pool/spa contracts which the Armstrongs later converted to the fixed-rate methodology. The Armstrongs claim that the 1995 "average contract cost" should have been compiled from all of AHS's Texas pool/spa contracts.

Although the parties intended to convert pool/spa contracts throughout the entire state, contracts were actually converted only in Dallas-Fort Worth, Austin, and San Antonio. The 1995 average costs for contracts in non-urban areas are greater than in urban areas.[5] Thus, a bonus scheme based upon the difference between the average costs for post-conversion urban contracts, and pre-conversion statewide contracts, would effectively compensate the Armstrongs for cost savings not actually realized.

The language of the Armstrongs' employment agreements clearly states that bonuses are to be derived from actual cost savings.[6] The Armstrongs' interpretation, which compensates them

---

[5] The 1995 average contract cost in Dallas-Fort Worth was $106.03; Austin, $94.35; and San Antonio, $108.03. The average contract cost state-wide was $124.44.

[6] Paragraph 1, entitled "Basis Understanding," states that "AHS will share certain cost savings with Armstrong." Paragraph 3 explains, "AHS shall pay Armstrong his share of the cost savings generated from each Cost Savings Program." Paragraph 8(d) requires AHS to pay the Armstrongs a percentage of cost savings on "the applicable converted contracts."

5

for cost savings not actually realized, is obviously contrary to the spirit and intent of the savings programs.  We agree with the district court that program one "permitted AHS to pay Plaintiffs based only on the cost savings generated in the areas where the pool/spa program had been implemented."

> **2)** **Savings Program Four: Recommending that AHS Charge Customers for Freon Recovery**

Savings program four rewards the Armstrongs for proposing cost saving "contract coverages, limitations, and exclusions which AHS has not previously adopted."  The Armstrongs contend that AHS breached the terms of program four when it refused to compensate them for the cost savings generated by their proposal that AHS charge customers for freon recovery.

AHS's home warranty contracts did not provide coverage for the costs related to freon recovery.  The Armstrongs proposed that cost savings would be realized by a stricter enforcement of the freon exclusionary clause.  Because the Armstrongs merely suggested that AHS enforce an existent contractual provision, the appellants did not propose a contractual change "which AHS has not previously adopted."  Thus, AHS's refusal to compensate the Armstrongs for the resultant cost savings was not a breach of the employment agreement.

## B. Negligent Misrepresentation

The appellants next urge that AHS negligently misrepresented

6

itself throughout contract negotiations.  In particular, the Armstrongs assert that AHS misstated that it was unprofitable in the Dallas-Fort Worth market, and that the average contract cost in Texas was based on "historical and current cost data."

The district court held that both of the Armstrongs' negligent misrepresentation claims were time-barred by the Texas two-year statute of limitations.  <u>See</u> Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002).  The Armstrongs do not contend that they filed their lawsuit within two years of being injured; rather they assert that the Texas statute of limitations was tolled by the discovery rule.

It is unclear whether the discovery rule tolls the Texas statute of limitations for negligent misrepresentation claims. <u>See</u> <u>Kansa Reins. Co. v. Congressional Mortgage Corp.</u>, 20 F.3d 1362, 1372 (5th Cir. 1994) ("We similarly decline to apply the discovery rule to a negligent misrepresentation claim, finding that the Texas courts classify such a cause of action as a negligent tort rather than a fraud action.").  <u>But</u> <u>see</u> <u>Matthiessen v. Schaefer</u>, 27 S.W.3d 25, 31 (Tex. App.--San Antonio 2000, pet. denied) ("[T]he discovery rule applies to [a] claim of negligent misrepresentation."); <u>Hendricks v. Thornton</u>, 973 S.W.2d 348, 365 (Tex. App.--Beaumont 1998, pet. denied).  We need not address this issue of law, however, unless the Armstrongs' negligent misrepresentation claims are of the type protected by

the discovery rule.

The discovery rule only reaches a claim if the injury is inherently undiscoverable, and the evidence of the injury is objectively verifiable. See Velsicol Chemical Corp. v. Winograd, 956 S.W.2d 529, 531 (Tex. 1997). An injury is inherently undiscoverable if it is of a type not generally discoverable by the exercise of reasonable diligence. See HECI Exploration Co. v. Neel, 982 S.W.2d 881, 886 (Tex. 1998) (the applicability of the discovery rule is determined categorically by examining the nature of the particular injury alleged).

We find that the profitability of a corporate division, and the source of information which underlies a cost quotation, are precisely the types of information that a seller involved in a substantial business transaction would seek to discover and could discover through the exercise of reasonable diligence. See Martinez Tapia v. Chase Manhattan Bank, N.A., 149 F.3d 404, 409 (5th Cir. 1998) ("The investor who seeks to blame his investment loss on fraud or misrepresentation must himself exercise due diligence to learn the nature of his investment and associated risks."). Of added significance, the Armstrongs even seem to have been aware of their injury. For instance, in a December 1995 deposition, the appellants acknowledged that they might have been defrauded by AHS.

Thus, assuming that the discovery rule applies to claims for

8

negligent misrepresentation, the Armstrongs would nonetheless not benefit from its application because their injuries were not inherently undiscoverable. We therefore affirm the finding of the district court that appellants' claims are time-barred under the Texas statute of limitations.

## C. Fraud

The appellants next urge that AHS intentionally misrepresented itself during contract negotiations. They contend that AHS fraudulently stated that it was expanding its Systems Checks program, and that the average contract cost in Texas was based on "historical and current cost data."

Under Texas law, fraud requires "a material representation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998). AHS maintains that the employment agreements' merger clauses preclude the Armstrongs from establishing the "reliance" element of fraud claims.

Texas courts hold that "a merger clause can be avoided based on fraud in the inducement and that the parol evidence rule does not bar proof of such fraud." Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 179 (Tex. 1997) (citing Dallas Farm

9

Machinery Co. v. Reaves, 307 S.W.2d 233 (1957)). This general principle, however, does not wholly preclude parties from bargaining for, and executing, a release barring future fraud claims. For instance, a fraud claim can be negated where a merger clause evinces a party's clear and unequivocal expression of intent to disclaim reliance on specific representations. See Schlumberger, 959 S.W.2d at 179. Moreover, courts utilize parol evidence to evaluate whether a disclaimer of reliance is enforceable. Id. ("[T]he contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding.").

The Armstrongs' employment agreements provide:

> This Agreement shall constitute the entire contract between the parties and supercedes all existing agreements between them, whether oral or written, with respect to the subject matter hereof.

This clause, while indicative of the parties' intent to bar later disputes related to underlying agreements, notably fails to mention or refer to prior representations. Cf. U.S. Quest Ltd. v. Kimmons, 228 F.3d 399 (5th Cir. 2000) (holding that merger clause superceding all prior "agreements, communications, or understandings" was a valid disclaimer of reliance upon representations). We nonetheless conclude, upon review of the entire employment agreement, that the Armstrongs' merger clauses were unequivocal disclaimers of reliance.

The language and the intent of the employment agreements

10

makes clear that the Armstrongs did not rely upon AHS's representation that it was expanding its Systems Checks program. For example, savings program five states that "AHS shall have the sole right to determine whether to implement a systems check program and to what extent."

Moreover, the agreements demonstrate that the Armstrongs did not rely upon statements that the average contract cost in Texas was based on "historical and current cost data." Paragraph 11 of the Incentive Plan dictates that "AHS makes no representations, warranties, and/or guarantees of the accuracy of the numbers and/or assumptions, the savings to be realized and/or bonus to be paid under Cost Savings Programs 1-6," and that all numerical information and assumptions were "estimated" and "provided for information purposes only."

Reviewing the employment agreement in whole, we find the merger clauses were clear and unequivocal disclaimers of reliance. Thus, summary judgment of the Armstrongs' fraud claims was warranted.

III.

AHS did not breach the Armstrongs' employment agreements. We find that the "average contract cost," as outlined in savings program one, is a function of those contracts which the Armstrongs later converted to the fixed-rate methodology. We also find that the fourth savings program does not reward

11

recommendations to enforce warranty provisions.  Moreover, the appellants' negligent misrepresentation claims are time-barred by Texas' statute of limitations, and their fraud claims are precluded by the agreements' merger clauses.  AFFIRMED.