IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 30, 2008

Charles R. Fulbruge III
Clerk

No. 08-20037
Summary Calendar

JAMES FONTENEAUX

Plaintiff - Appellant

v.

SHELL OIL CO; SHELL INFORMATION TECHNOLOGY
INTERNATIONAL INC

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
4:05-CV-4033

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

James Fonteneaux filed suit against Shell Oil Co. and Shell Information Technology International Inc. alleging race and age discrimination. The district court granted the Defendants' motion for summary judgment.

On appeal, Fonteneaux argues that there were factual issues and legal errors that require reversal. We disagree and affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. BACKGROUND

We will refer to the Defendants collectively as "Shell." Fonteneaux was employed at Shell from May 1976 through February 2005, where he progressed through various positions. Throughout the 1990s, Fonteneaux worked with Shell's information technology systems. In 1998, Shell began implementing a new global information technology services strategy which remained in a state of change until 2003. It is during this transitional period that Fonteneaux believed he was more qualified to fill certain positions than the persons selected. In September 2001, Jay Crotts was selected as the interim manager of Shell's Strategic Relations & Procurement ("SR&P") division. In 2002, Fonteneaux began working under Crotts as an interim Strategic Relations Manager ("SRM"), a position in the SR&P division.

In July 2003, Shell hired Kristine Moore as the SR&P division's permanent manager. After Moore became the SR&P division manager, she reevaluated positions as part of a reorganization. The decision was made to replace all of the SRM positions with Strategic Relations Account Manager ("SRAM") positions. The new positions required 10-15 years of external sales experience, i.e., with vendors outside of Shell itself. None of the fourteen Shell employees who applied for the new positions, including current SRMs, had the required sales experience.

All except one of the SRAM positions were filled from outside of Shell. The exception was a position filled by a citizen of the United Kingdom. That country's employment law was interpreted to entitle the employee to a transfer. The remaining Shell employees were provided a list of Shell position vacancies and offered a severance package. All of the other internal Shell candidates for the new SRAM positions were notified of their non-selection in September 2004. Fonteneaux did not obtain another Shell position, refused a severance package, and his employment was terminated at the end of February 2005.

Fonteneaux filed his charge of discrimination with the Equal Employment Opportunity Commission on March 14, 2005. Fonteneaux made no specific allegations in his charge. The EEOC issued a right to sue letter, and suit was filed on November 30, 2005. The district court on August 22, 2007, granted Shell's motion for summary judgment on all claims. In a supplemental order dated December 14, 2007, the court addressed claims under 42 U.S.C. Section 1981 and denied them as well. Fonteneaux appeals.

## II. DISCUSSION

In our review of the district court's grant of summary judgment, we apply the same analysis as did that court, examining the facts and inferences in the light most favorable to the party opposing judgment. Armstrong v. American Home Shield Corp., 333 F.3d 566, 568 (5th Cir. 2003).

Fonteneaux argues that there were fact issues that should have prevented summary judgment. He organizes his brief by sections that address five specific claims that were denied, and then a sixth section dealing with the limited acceptance of his affidavit. We will follow that organization except that the validity of the affidavit will be discussed where relevant as to specific claims.

1. New SRAM positions

Fonteneaux is an African-American, a member of a protected class, who was not selected for the new SRAM position, and the positions were filled by persons outside of his protected class. The district court found that those facts satisfied three of the four factors for a prima facie case of discrimination, but that there was no evidence that Fonteneaux was qualified for the position. See Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001). The qualification for the new SRAM positions that he did not meet, nor did any other of the occupants of the SRM positions at Shell, was 10-15 years of sales experience.

Fonteneaux argues that the shorter-term sales experience he did have, taken with evidence that Shell's human resource office thought that the new

SRAM position was not more than 30% different than the SRM position, reveal that he was actually qualified for the new position. This argument is a challenge to Shell's decision setting the minimum qualifications for the position. Substantial weight is given to an employer's decision on necessary credentials; there was no evidence sufficient to block summary judgment that the sales experience requirement had a discriminatory purpose. See Deines v. Texas Dep't of Protective and Regulatory Servs., 164 F.3d 277, 281 (5th Cir. 1999). Shell justified the requirement of lengthy sales experience external to Shell on the fact that the new SRAM positions would have an enhanced role in the company compared to the older SRM position. Fonteneaux had no such experience. Any sales experience Fonteneaux acquired was from within the Shell entity.

There is no material fact in dispute on this point. The only SRM who gained a new SRAM position was the citizen of the United Kingdom, and all lacked the required experience established by Shell. Fonteneaux did not demonstrate a prima facie case of discrimination in not being selected for one of the new SRAM positions.

2. Retaliation

Fonteneaux argues that he demonstrated a prima facie case of retaliation because his old SRM position was terminated within five months from the date he complained of discrimination for not being selected for a new SRAM position.

To establish a prima facie case of retaliation, Fonteneaux must establish the following: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007).

Based on Fonteneaux's allegations, he was informed that his SRM position, along with the others, would be replaced with new SRAM positions which required advanced sales experience. It was only after receiving this

information and being notified that none of the current SRM's, with the exception of the U.K. citizen, were eligible to transfer into a new SRAM position, that Fonteneaux complained of discrimination.

The protected activity Fonteneaux complains of took place after the decision to terminate his SRM position was already made. A September 2004 meeting in which he complained about discrimination occurred after Fonteneaux was not selected for a new SRAM position; the complaint could not have caused the non-selection. There are no facts alleged that create a basis for a retaliation claim. Summary judgment was proper.

3. Statute of limitations for claims relating to SR&P division positions

Fonteneaux argues that he was the most qualified person for the interim manager and permanent manager of the SR&P division. Fonteneaux included a claim of discriminatory failure to promote under 42 U.S.C. § 1981. The proper statute of limitations for a claim under that statute is determined by whether the claim would have been viable before certain 1991 congressional enactments.

Fonteneaux concludes that the district court improperly applied Texas's two-year statute of limitations instead of a four-year federal limitations period. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon 2002) (two-year statute of limitations); 28 U.S.C. § 1658(a) (four-year statute of limitations for "a civil action arising under an Act of Congress enacted" after December 1, 1990").[1]

Because Section 1981 does not contain a statute of limitations, traditionally the most analogous state statute of limitations has been applied. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 371 (2004). After enactment of the 1991 Civil Rights Bill by Congress, a four-year statute of limitations

---

[1] We note that alternatively, Fonteneaux argues even if the federal limitations period does not apply, Texas applies a four-year statute of limitations for contractual matters and Section 1981 allows a cause of action based on a contractual relationship. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a). However, this Circuit has recognized that claims of racial discrimination are subject to Texas's two-year statute of limitations. Jones v. ALCOA, Inc., 339 F.3d 359, 368 (2003).

applies "if the plaintiff's claim against the defendant was made possible" by the 1991 or later statute. Id. at 382.

Fonteneaux's claim of failure to promote based on alleged racial discrimination would have been actionable without the 1991 statutory changes if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981." Patterson v. McLean Credit Union, 491 U.S. 164, 185 (1989) superseded by statute on other grounds as stated in CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951 (2008).

The 1991 amendment to Section 1981 was in response to the holding in Patterson that claims of post-contract-formation racial discrimination in retaliation for engaging in protected activity were not actionable under Section 1981. Humphries, 128 S. Ct. at 1956-58. The Patterson holding, excluding post-contract-formation conduct from Section 1981's scope, is what gave rise to the 1991 amendment. Id. at 1956. Discriminatory refusal to enter into a new employment contract was actionable under Section 1981, as the language we quoted from Patterson reveals.

"In deciding whether a change of position rises to the level of a new and distinct relation, the court must compare the employee's current duties, salary, and benefits with those incident to the new position." Police Ass'n ex rel. Cannatella v. City of New Orleans, 100 F.3d 1159, 1170-71 (5th Cir. 1996). Shell argues that Fonteneaux, if promoted, would have attained supervisory status over SR&P division employees. Where a routine promotion involves the attainment of supervisory status, that alone does not create a new and distinct employment relationship. Johnson v. Uncle Ben's, 965 F.2d 1363, 1371 (5th Cir. 1992). However, a non-routine promotion that involves the attainment of supervisory status may be categorized as creating a new and distinct employment relationship. See Harrison v. Associates Corp. of North America,

6

917 F.2d 195, 198 (5th Cir. 1990). There is no evidence that Fonteneaux had any supervisory capacity in his SRM position. The promotions which he sought involved the ability to make employment decisions as a Shell manager. A promotion that would allow an employee to hire and fire subordinates is the type of relationship that creates a new and distinct employment relationship.

Therefore, the two-year Texas statute of limitations applied. Fonteneaux was aware of his not being promoted no later than July 2003 for the permanent position and much earlier for the interim manager position. He did not file suit until November 2005. These claims are therefore barred.

4. Disparity in pay

Fonteneaux argues that he provided sufficient evidence to survive summary judgment on his disparate pay claim. He alleged that his white coworkers in the old SRM positions received higher compensation. In support of this allegation, Fonteneaux offered his affidavit and a document that purportedly contained salary information of his coworkers from 2003-2005. The district court ruled that this evidence was not competent. The salary table did not include all of Fonteneaux's coworkers, and did not indicate its source.

Evidence that would not be admissible at trial is not competent evidence to be considered during summary judgment. Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 192 (1991). Affidavits certainly may be sufficient evidence, but "unsubstantiated assertions are not competent summary judgment evidence." Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994). On its face, Fonteneaux's affidavit is comprised of mere allegations and hearsay. The district court properly concluded that the pay table document and Fonteneaux's affidavit are not proper summary judgment evidence. Summary judgment was proper on the disparity in pay claim.

5. Category Manager of IT-Hardware and IT-Software positions

Fonteneaux argues that the district court failed to consider his claims of race and age discrimination based on not being selected for two separate positions as Category Manager. He argues that, despite his being qualified for each position, the positions were filled with white females under the age of forty.

The district court held that Fonteneaux failed to state any specific facts regarding discrimination in not being selected for these Category Manager positions. As discovery progressed in this case, Fonteneaux did not seek any information pertinent to the Category Manager positions.

Fonteneaux concedes that this issue was first raised in his response to Shell's motion for summary judgment. Fonteneaux provided no facts or details to Shell on these claims even after Shell filed a motion for a more definite statement. Fonteneaux, in his district court filings, provided no dates in relation to the Category Manager positions. On appeal, Fonteneaux does not provide any specific date or factual description of alleged discrimination regarding these positions. The district court properly concluded that Fonteneaux did not prosecute these claims. To the extent these claims were raised, summary judgment was proper.

The judgment of the district court is AFFIRMED.