**Reversed and Rendered and Memorandum Opinion filed July 18, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00192-CV

_____

**DRESSER-RAND COMPANY, Appellant**

**V.**

**SCOTT M. BOLICK, Appellee**

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-65793**

## M E M O R A N D U M   O P I N I O N

Appellant Dresser-Rand Company challenges the trial court's orders denying its motion for summary judgment and granting summary judgment in favor of appellee Scott M. Bolick. We reverse the summary judgment granted in favor of Bolick and render judgment in favor of Dresser-Rand.

# BACKGROUND

Bolick was originally hired by Dresser-Rand in 2006. He worked out of Albany, New York, and his title was "Global Commodity Manager." Bolick left the company to pursue other interests in 2007; he was rehired in 2008, once again with the title "Global Commodity Manager." Dresser-Rand transferred Bolick to its Houston office in 2009.

This appeal hinges on the Relocation Expense Reimbursement Agreement Bolick signed before his 2009 transfer to Houston. In relevant part, that agreement provides:

> Employee Name: Scott M. Bolick
> New Work Location: Houston
> Job Assignment Title: Global Commodity Mgr.
> Start Date of New Assignment: 5/1/2009
>
> 1. This Agreement effective this 28th day of April, 2009 (hereinafter "Effective Date") is by and between Scott M. Bolick (hereinafter "Employee") and DRESSER-RAND COMPANY (hereinafter "DRESSER-RAND"). As of the Effective Date of this Agreement, DRESSER-RAND has agreed to incur expenses or reimburse Employee for certain expenses for the purpose of relocating Employee and Employee's eligible household members to a new DRESSER-RAND work location identified above. The relocation benefits being offered are described in the Relocation Letter of Understanding, a copy of which is attached hereto for reference.
>
>       *           *           *
>
> 3. If Employee voluntarily terminates employment with DRESSER-RAND for any reason or requests a transfer from the New Work Location, then Employee agrees to repay DRESSER-RAND any and all relocation expenses, or payments made in lieu of relocation, incurred or reimbursed by DRESSER-RAND on the prorated basis described in 7 below.

2

$$* \qquad * \qquad *$$

6.     Nothing in this Agreement shall change Employee's status as an "At-Will" employee whose employment may be terminated for any reason at any time by either DRESSER-RAND or Employee. Nothing in this Agreement constitutes a contract or guarantee of employment for any specific term or limits either party's right to terminate the employment relationship.

7.     <u>EMPLOYEE'S PRORATED RELOCATION REPAYMENT SCHEDULE</u>:
    Employee agrees that from the start date of the new assignment at the new location listed above and if a voluntary termination of employment, a request for a transfer out of the assigned location, or Employee's employment is terminated for Cause occurs then with respect to the periods of times [sic] listed below:

If employment is terminated within one year, per this Agreement, then Employee will repay 100%

$$* \qquad * \qquad *$$

9.     Any repayment required under this Agreement will be due and payable to DRESSER-RAND within thirty (30) days of voluntary termination of employment, request for transfer out of the assignment location, or termination for Cause . . . .

$$* \qquad * \qquad *$$

10.     The terms of this Agreement shall be governed by and interpreted in accordance with the laws of the State of Texas. This Agreement contains the entire agreement and understanding between Employee and DRESSER-RAND with respect to the subject matter hereof and supersedes all prior understandings, arrangements, representations, warranties and agreements between the parties, whether oral or written, with respect to the same. This Agreement may only be modified by a writing that is signed by each DRESSER-RAND's duly authorized representative.

$$* \qquad * \qquad *$$

3

**EMPLOYEE HEREBY EXPRESSLY WARRANTS AND REPRESENTS THAT, BEFORE ENTERING INTO THIS AGREEMENT, THAT [sic] THEY HAVE READ, INFORMED THEMSELVES [sic] OF AND UNDERSTAND ALL THE TERMS, CONTENTS, CONDITIONS AND EFFECTS OF ALL PROVISIONS OF THIS AGREEMENT, THAT NO PROMISE OR REPRESENTATION OF ANY KIND HAS BEEN MADE, EXCEPT FOR THOSE EXPRESSLY STATED IN THIS AGREEMENT AND THAT THEY ARE ENTERING INTO THIS AGREEMENT ON A KNOWING AND VOLUNTARY BASIS.**

Bolick resigned from his employment less than one year after relocating to Houston, but he did not repay more than $30,000 in moving expenses Dresser-Rand incurred on his behalf.

Dresser-Rand sued Bolick for breach of the Relocation Expense Reimbursement Agreement and asserted other claims not relevant to this appeal. On September 13, 2011, Dresser-Rand filed a motion for traditional summary judgment; on October 7, 2011, the trial court signed an order denying Dresser-Rand's motion "at this time." On December 5, 2011, Bolick filed a motion for traditional and no-evidence summary judgment. On January 4, 2012, the trial court signed two orders — one granting Bollick's motion, and another denying Dresser-Rand's motion a second time.

Dresser-Rand now appeals from all three orders in the trial court.

### ANALYSIS

We review summary judgments *de novo*. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *Raynor v. Moores Mach. Shop, LLC*, 359 S.W.3d 905, 907 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When both parties move for summary judgment and the trial court grants one motion and

4

denies the other, we determine all questions presented and render the judgment the trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Seber v. Union Pac. R.R.*, 350 S.W.3d 640, 655-56 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

## I. Bolick's Motions for Summary Judgment

Bolick moved for summary judgment on traditional and no-evidence grounds. For both types of motions, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Williams v. Bell*, No. 14-12-00691-CV, __ S.W.3d __, 2013 WL 1197760, at *3 (Tex. App.—Houston [14th Dist.] March 26, 2013, no pet.); *see Joe*, 145 S.W.3d at 157 (traditional summary judgment); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (no-evidence summary judgment).

In a traditional summary judgment, the movant has a burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Joe*, 145 S.W.3d at 157. We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Joe*, 145 S.W.3d at 157.

A no-evidence summary judgment is proper when (a) there is a complete absence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We affirm the summary judgment unless the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.*; *see* Tex. R. Civ. P. 166a(i). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *King Ranch*, 118 S.W.3d at 751. More than a scintilla of evidence exists

when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

Summary judgment may only be granted upon the grounds expressly stated in the summary judgment motion. Tex. R. Civ. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam). In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

Bolick asserted three grounds[1] in his summary judgment motion: (1) "The Relocation Agreement is an Unenforceable Penalty Clause;" (2) "The Clause Was Drafted, and Operates, as a Penalty Clause;" and (3) "Dresser Has No Evidence of Damages, Even if It Had a Valid Contract, Which It Does Not." Those are the only grounds upon which the trial court could have granted summary judgment in favor of Bolick, and those are the only grounds upon which we review the trial court's order granting summary judgment.[2] *See* Tex. R. Civ. P. 166a(c); *G & H Towing, Co.*, 347 S.W.3d at 297.

We examine each of these contentions in turn.

### A.    Unenforceable Penalty Clause

Bolick argued that the Relocation Expense Reimbursement Agreement is unenforceable because it amounts to a provision fixing unreasonably large liquidated damages.

---

[1] A fourth ground for summary judgment addressed Dresser-Rand's claim for unjust enrichment concerning Bolick's personal expenditures on a company American Express card. That claim is not at issue in this appeal.

[2] In light of the grounds raised in Bolick's motion for summary judgment, we do not address the following additional arguments raised in Bolick's appellate briefing in support of the trial court's grant of summary judgment in his favor: "There is no Contract for Payment of the Expenses Demanded by [Dresser-Rand];" and "Even if the relocation agreement is held not to constitute an unenforceable penalty, it was procured by fraud."

Liquidated damages clauses fix in advance the compensation to a party accruing from the failure to perform specified contractual obligations. *Dorsett*, 164 S.W.3d at 664. Liquidated damages are recoverable only when there has been a failure to perform contractual obligations. *Id.* Whether a contractual provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court to decide. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). Under the Texas Business and Commerce Code,

> [d]amages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in light of the anticipated or actual harm caused by the breach, the difficulties of proof or loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

Tex. Bus. & Com. Code §2.718 (a) (Vernon 2009).

We reject the premise of Bolick's argument because the Relocation Expense Reimbursement Agreement is not a liquidated damages provision.

The Dallas court of appeals has considered an agreement similar to the one at issue here. *See Sunbelt Servs., Inc. v. Grove Temp. Serv., Inc.*, No. 05-05-01090-CV, 2006 WL 2130144 (Tex. App.—Dallas Aug. 1, 2006, no pet.) (mem. op.). In that case, a contract between an employment agency (Grove) and its client provided for a placement fee if the client chose to offer a permanent position to an employee referred to them by Grove:

> Should you decide to hire a Grove temporary employee on a permanent basis within one year from the date of referral, the temporary would remain on Grove's payroll for a total of 520 hours. After completing the 520 hours, the Grove temporary will be released to you with no additional fee. If you would like the Grove temporary employee to become your permanent employee prior to completing the 520 hours, you will be billed 1% per $1,000 of the annual gross

7

salary up to 30%. The same fee applies should your company move our temporary to any other company or temporary agency's payroll.

*Id.* at *2. Grove referred Nanine Young to work for Sunbelt, and while Young worked for Sunbelt, she filled out timecards that were signed by her supervisor and sent to Grove. *Id.* at *1-*2. Those timecards included preprinted language describing the placement fee and referring to it as "liquidated damages." *Id.* at *3. After working 126 hours for Sunbelt, Young was offered a permanent position at the company. *Id.* at *1.

The court rejected Sunbelt's argument that the terminology on the preprinted timecards was dispositive and concluded that, as a matter of law, the placement fee was agreed compensation, not liquidated damages:

> [T]he contract's fee for Sunbelt's hiring Young within one year or 520 employment hours of Grove's referral of her to Sunbelt is not liquidated damages unless it was agreed it would be assessed for a breach of contract. In the contract, Sunbelt never agreed not to permanently hire Young within one year or 520 employment hours. Instead, it agreed to pay a particular fee if it did so.

*Id.* at *3.

We adopt the reasoning of the Dallas court of appeals and apply it here. The repayment obligation for resigning within one year does not constitute liquidated damages unless the parties agreed that the amount at issue would be assessed as damages if Bolick breached the contract by resigning within one year of relocation. In the agreement, Bolick's status as an at-will employee was expressly stated. Bolick never agreed not to resign within one year; instead, he agreed to repay Dresser-Rand's relocation expenses if he did resign within one year. Construing the agreement as a matter of law, we conclude that the repayment obligation was agreed compensation, not a liquidated damages provision. *See id.* at *4.

8

Because the obligation was not a liquidated damages provision, it cannot be an unenforceable penalty. *See* Tex. Bus. & Com. Code §2.718 (a). Thus, the trial court should not have granted summary judgment on the basis of Bolick's first argument.

## B. Operating as a Penalty Clause

In his second summary judgment argument, Bolick argued that the repayment obligation "[w]as [d]rafted, and [o]perates, as a [p]enalty [c]lause" because (1) it does not exclude further liability by making it clear that liquidated damages will be in lieu of other damages; (2) it is not a reasonable approximation of Dresser-Rand's damages; (3) it was designed to penalize people who left the company soon after joining it and encourage employees to stay near the company's headquarters in Olean, New York; and (4) there is evidence that Dresser-Rand actually saved money by transferring Bolick to Houston.

To the extent that this argument assumes the repayment obligation is a liquidated damages provision, we reject it for reasons explained above. *See* Tex. Bus. & Com. Code §2.718 (a); *Dorsett*, 164 S.W.3d at 664; *Sunbelt Servs.*, 2006 WL 2130144 at *3. Beyond that, Bolick does not offer any authority for summary judgment on the basis of the repayment obligation's original intent or its financial utility to Dresser-Rand.

The trial court should not have granted summary judgment on the basis of Bolick's second argument.

## C. No Evidence of Damages

Finally, Bolick argued that Dresser-Rand failed to produce any evidence of damages.

To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant, (2)

9

the plaintiff tendered performance or was excused from doing so, (3) the defendant breached the terms of the contract, and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In this context, a no-evidence summary judgment is proper only if Dresser-Rand has produced no more than a scintilla of probative evidence of damages. *See* Tex. R. Civ. P. 166a(i); *King Ranch*, 118 S.W.3d at 751.

Dresser-Rand provided the trial court with an itemized list of Dresser-Rand's expenditures related to Bolick's relocation, which was supported by an affidavit of Lori Lee, Dresser-Rand's human resources and global development manager. That evidence showed that Bolick's relocation expenses totaled $31,087.54, and $27,463.66 remained unpaid. Bolick has not argued that any of these expenses were not incurred by Dresser-Rand, only that he is not obligated to repay them.

We conclude that Dresser-Rand has presented more than a scintilla of evidence regarding damages; the trial court should not have granted summary judgment on the basis of Bolick's third argument. *See* Tex. R. Civ. P. 166a(i); *King Ranch*, 118 S.W.3d at 751.

Bolick did not argue any meritorious grounds for summary judgment; therefore, the trial court erred by granting summary judgment in his favor. *See* Tex. R. Civ. P. 166a(c); *G & H Towing, Co.*, 347 S.W.3d at 297. We must now determine whether the trial court also erred in denying Dresser-Rand's competing motion for summary judgment. *See Dorsett*, 164 S.W.3d at 661; *Seber*, 350 S.W.3d at 655-56.

## II. Dresser-Rand's Motion for Summary Judgment

Dresser-Rand asserted a single relevant[3] ground in its traditional motion for summary judgment against Bolick: "[Dresser-Rand] has established the essential elements of its claim against [Bolick] for Breach of the Agreement" based upon Bolick's failure to repay the relocation expenses as promised. Bolick argues that Dresser-Rand is not entitled to summary judgment because three fact issues are still in dispute.

### A. Breach of Contract

In the context of summary judgment, Dresser-Rand had the burden of showing there was no genuine issue of material fact and it was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Joe*, 145 S.W.3d at 157. To prevail on its breach of contract claim, Dresser-Rand needed to demonstrate (1) a valid contract existed between Dresser-Rand and Bolick, (2) Dresser-Rand tendered performance or was excused from doing so, (3) Bolick breached the terms of the contract, and (4) Dresser-Rand sustained damages as a result of the defendant's breach. *See Triple B Servs.*, 264 S.W.3d at 446.

Bolick conceded each of the first three elements in deposition testimony that Dresser-Rand attached to its motion for summary judgment. The transcript of that testimony provides, in relevant part:

> Q. (BY [Dresser-Rand's counsel Paul A.] PILIBOSIAN) The only thing that Dresser-Rand is agreeing to do in this relocation agreement is provide you with relocation money, right?
>
>          *             *             *
>
> A. And services.

---

[3] Like Bolick, Dresser-Rand also asserted grounds for summary judgment on the unjust enrichment claim that is not at issue in this appeal. Additionally, Dresser-Rand moved for summary judgment on several counterclaims that have been nonsuited by Bolick.

Q. (BY MR. PILIBOSIAN) Are you saying that those were not provided?
A. They were.
Q. So, Dresser-Rand held up its end of the bargain. They paid the relocation expenses. You terminated your employment within the — within one year voluntarily, right?
A. I did.

\*          \*          \*

Q. (BY MR. PILIBOSIAN) According to the agreement, you were supposed to pay your relocation expenses back to Dresser-Rand within 30 days after you left, right?

\*          \*          \*

A. That's what it read in the agreement.
Q. (BY MR. PILIBOSIAN) And that's what you signed off on?

\*          \*          \*

A. It is.
Q. (BY MR. PILIBOSIAN) And when you signed it, you intended to be bound by this contract, right?
A. I did.
Q. Okay, but you would agree with me you haven't abided by the contract. You haven't paid those expense [sic] back, right?

\*          \*          \*

A. Not to date.
Q. (BY MR. PILIBOSIAN) Okay. Do you have any intention of paying them back?
A. (No response from the witness.)
Q. I take that as a no. You don't have any intention of paying it back, do you?

\*          \*          \*

A. You are putting words in my mouth.

12

Q. (BY MR. PILIBOSIAN) You won't answer my question. So I'm asking — I'm trying to make it easier for you. Do you have any intention of paying that money back to Dresser-Rand?
A. Not at this time.

As we discussed above, the fourth element — damages — is established by the itemized list of expenses and Lee's affidavit.

Bolick's testimony establishes (1) the existence of a contract, (2) Dresser-Rand's performance, and (3) his own breach. He has not disputed (4) the amount of damages claimed by Dresser-Rand. Bolick nevertheless argues that Dresser-Rand is not entitled to summary judgment due to fraudulent inducement, prior breach, and estoppel.

## B.    Bolick's Defenses

### 1.    Fraudulent Inducement

Bolick alleges that he agreed to relocate to Houston only after Dresser-Rand promised him a promotion; he argues that, because his title and responsibilities remained the same after the move, the Relocation Expense Reimbursement Agreement was "procured by fraud." Dresser-Rand argues that Bolick's fraudulent inducement claim is precluded by provisions of the Relocation Expense Reimbursement Agreement.

A contract is subject to avoidance on the ground of fraud. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990); *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 328 (Tex. App.—Houston [14th Dist.] 2011, no pet.). However, a provision that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997); *McLernon*, 347 S.W.3d at 329. To determine

13

whether such a provision is present here, we must construe the language of the Relocation Expense Reimbursement Agreement.

In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006). Courts must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver of reliance provision is binding. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60 (Tex. 2008). Whether the parties express a clear and unequivocal intent to disclaim reliance on representations or to waive fraudulent-inducement claims is a threshold requirement. *Tex. Standard Oil & Gas, L.P. v. Frankel Offshore Energy, Inc.*, 394 S.W.3d 753, 763 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 n.8 (Tex. 2011). Once that intent is satisfied, a court should be guided by four factors in determining the enforceability of a disclaimer of reliance: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; and (4) the parties were knowledgeable in business matters. *Italian Cowboy*, 341 S.W.3d at 337 n.8; *Forest Oil*, 268 S.W.3d at 60. Ultimately, the determination of whether a provision forecloses a fraudulent inducement claim is a question of law. *See Italian Cowboy*, 341 S.W.3d at 333.

Several provisions of the Relocation Expense Reimbursement Agreement potentially are relevant to our disclaimer-of-reliance analysis.

On the first page of the agreement, immediately under the main title, there are four blanks that have been filled in with what Bolick concedes is his own

14

handwriting.  The blanks are labeled "Employee Name," "New Work Location," "Job Assignment Title," and "Start Date of New Assignment."  In the blank for Job Assignment Title, Bolick wrote "Global Commodity Mgr."

Paragraph 10 the agreement states:

This Agreement contains the entire agreement and understanding between Employee and DRESSER-RAND with respect to the subject matter hereof and supersedes all prior understandings, arrangements, representations, warranties and agreements between the parties, whether oral or written, with respect to the same.  This Agreement may only be modified by a writing that is signed by each DRESSER-RAND's duly authorized representative.

This language functions as a merger clause, which is defined as "'[a] provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document.'"  *IKON Office Solutions, Inc. v. Eifert*, 125 S.W.3d 113, 125 n.6 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (quoting *Black's Law Dictionary* 989 (6th ed. 1990)).  An additional potentially relevant clause appears at the end of the agreement:

**<u>EMPLOYEE HEREBY EXPRESSLY WARRANTS AND REPRESENTS THAT, BEFORE ENTERING INTO THIS AGREEMENT, THAT [sic] THEY HAVE READ, INFORMED THEMSELF [sic] OF AND UNDERSTAND ALL THE TERMS, CONTENTS, CONDITIONS AND EFFECTS OF ALL PROVISIONS OF THIS AGREEMENT, THAT NO PROMISE OR REPRESENTATION OF ANY KIND HAS BEEN MADE, EXCEPT FOR THOSE EXPRESSLY STATED IN THIS AGREEMENT AND THAT THEY ARE ENTERING INTO THIS AGREEMENT ON A KNOWING AND VOLUNTARY BASIS</u>**

The bold, underlined, all-capitals format appears in the original document.

15

In *IKON*, this court concluded that the requisite clear and unequivocal intent to disclaim reliance was demonstrated by two broadly worded clauses that parallel the clauses used here. *See id.* at 125-26.

In that case, we noted:

> The Acquisition Agreement includes a statement that it "constitutes the entire agreement concerning the subject matter hereof. No modification or waiver hereof shall be binding upon any party unless in writing and signed on behalf of the party against which the modification or waiver is asserted." The Employment Agreement is referenced in, and attached to, the Acquisition Agreement. The Employment Agreement, to which Eifert's job description was attached, contains clauses stating it contains the entire agreement between the parties; supercedes prior employee and compensation agreements, and can be changed, modified or extended only in writing. It also contains a provision stating, "[N]o commitments have been made relative to bonuses, guarantees or any other special provisions, except as specifically identified herein."

*Id.* Other courts have discerned the intent to disclaim reliance in similar clauses. *See Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 857-58 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.) (examining a clause providing that, "This agreement contains the entire agreement between the parties hereto in respect of the subject matter hereof and supercedes and cancels all previous agreements, negotiations, commitments and understandings, with respect to the subject matter hereof, whether made orally or in writing."); *see also Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003) (examining a clause providing that, "This Agreement shall constitute the entire contract between the parties and supercedes all existing agreements between them, whether oral or written, with respect to the subject matter hereof.").

More recently, the Texas Supreme Court has stated that "generic merger

16

language" is insufficient to demonstrate an intent to disclaim reliance. *See Italian Cowboy*, 341 S.W.3d at 336. Following that precept, the supreme court said the following provision was insufficient to disclaim reliance: "Tenant acknowledges that neither Landlord nor Landlord's agents, employees or contractors have made any representations or promises . . . except as expressly set forth herein." *Id.*

The language at issue in the Relocation Expense Reimbursement Agreement is broader and more explicit than the "generic merger language" quoted in *Italian Cowboy*. Paragraph 10 excludes prior oral and written understandings. The bold, underlined, all-capitals provision at the end of the agreement reiterates the absence of any extra-contractual promise or representation; this provision also warrants that Bolick read the agreement and informed himself of its contents before entering it, that Bolick understood the agreement, and that he entered into the agreement on a "knowing and voluntary basis."

Additionally, the agreement clearly states that one term of Bolick's relocation is that he will retain the title of "Global Commodity Manager." One of the elements of a claim based in fraud is the *justifiable* reliance on an alleged misrepresentation. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law. *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see Atlas Props, Inc. v. Republic Waste Servs. of Tex., Ltd.*, No. 02-11-00332-CV, 2012 WL 579442, at *2 (Tex. App.—Fort Worth Feb. 23, 2012, no pet.) (mem. op.) (concluding that a contract expressly providing for a 36-month term precluded the plaintiff from relying on an oral representation of another term length); *see also E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d

311, 321 (Tex. App.—Beaumont 2004, no pet.) (concluding that a contract expressly forbidding insurance agents from making certain representations precluded the plaintiff from relying on the forbidden representations).

Under these circumstances, the agreement contains clear and unequivocal language necessary to defeat reliance. We therefore turn to the other *Italian Cowboy* factors: (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute; (2) the complaining party was represented by counsel; (3) the parties dealt with each other in an arm's length transaction; and (4) the parties were knowledgeable in business matters. *Italian Cowboy*, 341 S.W.3d at 337 n.8.

Only one *Italian Cowboy* factor potentially cuts in favor of Bolick; it is unclear on this record whether he was represented by counsel during contract negotiations. This factor is not determinative because the other three factors overwhelmingly demonstrate an intent to defeat reliance.

The terms of the contract are directly relevant to the present dispute and are not boilerplate. In particular, the term at the core of this dispute — Bolick's post-relocation position — was inserted into the agreement by Bolick himself. Likewise, the terms of the agreement reflect that Bolick executed it "on a knowing and voluntary basis," and Bolick does not deny that it was the result of an arm's length negotiation. The record makes it clear that Bolick was a knowledgeable party during negotiations; his estoppel argument relies completely on his conceded "intimate knowledge of Dresser-Rand's relocation program."

> I worked with others at the company to build the program and was involved in all aspects of the program throughout my tenure with the company. For example, I was part of the team that reviewed the program on a quarterly basis to monitor the performance of Dresser-

Rand's relocation services provider . . . the program's expenses, relocation policy exceptions[,] and industry relocation program trends.

We conclude that, as a matter of law, the Relocation Expense Reimbursement Agreement includes a disclaimer of reliance that precludes Bolick's fraudulent inducement defense.

Therefore, Bolick's fraudulent inducement claim does not raise a genuine issue of material fact, and it has no effect on Dresser-Rand's motion for summary judgment. *See* Tex. R. Civ. P. 166a(c); *Joe*, 145 S.W.3d at 157.

### 2. Prior Breach

Bolick argues that Dresser-Rand committed a material breach of contract that discharged his duty to repay the moving expenses Dresser-Rand accrued on his behalf; he alleges that, "[Dresser-Rand] breached the contract by failing to promote Bolick to Corporate Purchasing Manager."

We reject this argument for the same reasons we reject Bolick's fraudulent inducement claim. *See Atlas Props*, 2012 WL 579442, at *2; *DRC*, 112 S.W.3d at 858. In clear, unambiguous terms, the Relocation Expense Reimbursement Agreement provides that, upon relocation, Bolick was to retain his title of Global Commodity Manager. That Bolick actually did retain his title of Global Commodity Manager is not only uncontroverted, but it is the very basis of the present litigation.

Even if we assume that Dresser-Rand promised to promote Bolick to Corporate Purchasing Manager, such a promise is outside the terms of the Relocation Expense Reimbursement Agreement. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of *that* contract, the other party is discharged or excused from further performance."

19

*Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) (emphasis added). Dresser-Rand abided by the terms of the Relocation Expense Reimbursement Agreement, and Bolick's obligations under that agreement have not been discharged or excused. *See id.*

Bolick's prior breach argument is likewise ineffective in raising a genuine issue of material fact that would preclude summary judgment in favor of Dresser-Rand. *See* Tex. R. Civ. P. 166a(c); *Joe*, 145 S.W.3d at 157.

### 3. Estoppel

Bolick's final argument against summary judgment hinges on his contention that Dresser-Rand "waived (or is estopped from enforcing) its alleged right to reimbursement for relocation expenses." In support of this contention, Bolick notes that "several other employees to whom [Dresser-Rand] paid benefits under the company's 'relocation policy' left the company within one year, and [Dresser-Rand] made no effort to recoup these benefits from them."

This argument has no merit; Dresser-Rand's previous enforcement conduct has no bearing on its right to enforce the contract at issue. *See Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d 532, 541 (Tex. App.—Dallas 2000), *aff'd*, 53 S.W.3d 368 (Tex. 2001). In the face of an unambiguous contract, past conduct or promises do not give rise to estoppel. *Id.*

Assuming *arguendo* that Dresser-Rand has historically been lax in enforcing repayment obligations under the Relocation Expense Reimbursement Agreement, by allowing former employees to keep more money than that to which they were entitled under the agreement, Dresser-Rand did not create a right in all future employees who sign the Relocation Expense Reimbursement Agreement. *See Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 734 (Tex. 1981). In *Sun Oil*, an oil

company paid its lessors a royalty greater than that provided for in the express terms of the leases. *Id.* at 727. For more than forty years, the oil company paid more than was contractually required, and internal documentation even showed that the oil company was aware of the overpayment. *Id.* at 727, 733. The supreme court reasoned that four decades of excess payments was not a promise to continue to overpay. *See id.* at 733.

Applying the *Sun Oil* reasoning here, we conclude that, even if Bolick's allegations of Dresser-Rand's past conduct were true, Bolick has failed to raise a genuine issue of material fact because Dresser-Rand's past conduct is irrelevant to its current rights.

Accordingly, Dresser-Rand has carried its burden and demonstrated that there is no genuine issue of material fact regarding its claim for breach of contract. *See Triple B Servs.*, 264 S.W.3d at 446. Dresser-Rand was entitled to judgment as a matter of law, and the trial court erred by denying its motion for summary judgment. *See* Tex. R. Civ. P. 166a(c); *Joe*, 145 S.W.3d at 157.

## III. Attorney's Fees

In its motion for summary judgment, Dresser-Rand asserted that it was entitled to recover attorney's fees from Bolick; Dresser-Rand renews that assertion on appeal.

The prevailing party may recover reasonable attorney's fees in claims for breach of contract. Tex. Civ. Prac. & Rem. Code § 38.001(8) (Vernon 2008). Clear, direct, and uncontroverted evidence of attorney's fees is taken as true as a matter of law, especially when the opposing party has the means and opportunity to disprove the testimony. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 20 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Ragsdale v. Progressive*

*Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)).

Dresser-Rand produced an affidavit from its trial counsel, Pilibosian, attesting to attorney's fees totaling $16,412.48 through the date of the trial court's hearing on Dresser-Rand's motion for rehearing of its motion for summary judgment. Pilibosian anticipated that in the event the case was appealed to the court of appeals, a reasonable fee for additional services would be $12,500.00. Bolick did not object to or controvert this evidence.

Because we have determined that Dresser-Rand was entitled to judgment as a matter of law in the trial court, we conclude that Dresser-Rand is entitled to attorney's fees as a matter of law. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8).

## CONCLUSION

We reverse the trial court's order granting summary judgment in favor of Bolick and render summary judgment in favor of Dresser-Rand. We further render judgment awarding Dresser-Rand attorney's fees in the amount of $28,912.48.

/s/    William J. Boyce
Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.

22